Sean Pak (Bar No. 219032)
seanpak@quinnemanuel.com
Sam Stake (Bar No. 257916)
samstake@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California  94111-4788
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

Victoria F. Maroulis (Bar No. 202603)
victoriamaroulis@quinnemanuel.com
Yury Kapgan (Bar No. 218366)
yurykapgan@quinnemanuel.com
Mark Tung (Bar No. 245782)
marktung@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive, Fifth Floor
Redwood Shores, CA 94065
Telephone:     (650) 801-5000
Facsimile:     (650) 801-5100

Paul F. Brinkman*
paulbrinkman@quinnemanuel.com
S. Alex Lasher*
alexlasher@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th Floor
Washington, DC 20001
Telephone:     (202) 538-8000
Facsimile:     (202) 538-8100

**pro hac vice* application to be filed*

*Attorneys for Varian Medical Systems, Inc. and Varian Medical Systems International AG*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VARIAN MEDICAL SYSTEMS, INC. and VARIAN MEDICAL SYSTEMS INTERNATIONAL AG,<br><br>Plaintiffs,<br><br>v.<br><br>ELEKTA AB, ELEKTA LTD., ELEKTA INC., ELEKTA HOLDINGS U.S., INC., ELEKTA GMBH, ELEKTA INSTRUMENT (SHANGHAI) LTD., ELEKTA BEIJING MEDICAL SYSTEMS CO. LTD. and IMPAC MEDICAL SYSTEMS, INC.<br><br>Defendants. | Case No._____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Varian Medical Systems, Inc. and Varian Medical Systems International AG (collectively "Varian") file this complaint against Defendants Elekta AB, Elekta Ltd., Elekta Inc., Elekta Holdings U.S., Inc., Elekta GmbH, Elekta Instrument (Shanghai) Ltd., Elekta Beijing Medical Systems Co. Ltd. and IMPAC Medical Systems, Inc. (collectively "Elekta" or "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*, from Elekta's direct and indirect infringement of U.S. Patent Nos. 7,880,154 (the "'154 Patent"), 7,906,770 (the "'770 Patent"), and 8,696,538 (the "'538 Patent") (collectively, the "Asserted Patents").

## PARTIES

2. Varian Medical Systems, Inc. ("VMS") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3100 Hansen Way, Palo Alto, California 94304.

3. Varian Medical Systems International AG ("VMSI") is a corporation organized and existing under the laws of Switzerland with its principal place of business at Hinterbergstrasse 14, 6330 Cham, Switzerland. VMSI is a wholly-owned subsidiary of VMS.

4. Upon information and belief, Defendant Elekta AB ("EAB") is a corporation organized and existing under the laws of Sweden, having a principal place of business at Kungstensgatan 18, SE-103 93 Stockholm, Sweden.

5. Upon information and belief, Defendant Elekta Ltd. ("EL") is a corporation organized and existing under the laws of the United Kingdom, with its principal place of business at Linac House, Fleming Way, RH10 9RR Crawley, United Kingdom, and EL is a wholly-owned subsidiary of Defendant EAB.

6. Upon information and belief, Defendant Elekta, Inc. ("EI") is a corporation organized and existing under the laws of the State of Georgia with its principal place of business at 400 Perimeter Center Terrace, Suite 50, Atlanta, Georgia, and EI is a wholly-owned subsidiary of Defendant Elekta Holdings U.S., Inc.

7. Upon information and belief, Defendant Elekta Holdings U.S., Inc. ("EHUS") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 400 Perimeter Center Terrace, Suite 50, Atlanta, Georgia, and EHUS is a wholly-owned subsidiary of Defendant EAB.

8. Upon information and belief, Defendant Elekta GmbH ("EG") is a corporation organized and existing under the laws of the Federal Republic of Germany, with its principal place of business at Borsteler Chaussee 49, 22453 Hamburg, Germany, and EG is a wholly-owned subsidiary of EAB.

9. Upon information and belief, Defendant Elekta Instrument (Shanghai) Ltd. ("EIS") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at Room 3202 & 3203, Pangu Plaza, Office Building, Block A, No. 27 Fourth Ring Mid Road, Chaoyang District, 100101 Shanghai, China, and EIS is a wholly-owned subsidiary of EAB.

10. Upon information and belief, Defendant Elekta Beijing Medical Systems Co. Ltd. ("EBMS") is a corporation organized and existing under the laws of the People's Republic of China, with its principal place of business at No. 21, Chuang Xin Road, Science & Technology Park, Chang Ping, 102200 Beijing, China, and EBMS is a wholly-owned subsidiary of EAB.

11. Upon information and belief, Defendant IMPAC Medical Systems, Inc. ("IMPAC") is a corporation organized and existing under the laws of the State of Delaware, with

-3-

COMPLAINT FOR PATENT INFRINGEMENT
DEMAND FOR JURY TRIAL

its principal place of business at 100 Mathilda Place, 5th Floor, Sunnyvale, CA 94086, and IMPAC is a wholly-owned subsidiary of EHUS.

12. All of the Defendants operate under and identify with the trade name, "Elekta." Upon information and belief, each of the Defendants directly or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells products and services in the United States, including in the State of California and in this District, and otherwise purposefully directs activities to the same. Upon information and belief, the Defendants have been and are acting in concert and are otherwise liable jointly, severally or in the alternative for a right to relief with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences related to the making, using, importing into the United States, offering for sale or selling of at least one infringing product or process.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

14. This Court has personal jurisdiction over IMPAC at least because IMPAC's principal place of business is in the State of California and in this District.

15. Upon information and belief, this Court has personal jurisdiction over each of the Defendants because each has committed acts of patent infringement and/or contributed to or induced acts of patent infringement by others in the State of California and in this District. As such, each of the Defendants has established sufficient minimum contacts with this District such that it should reasonably and fairly anticipate being called into court in this District and has purposefully directed activities at residents of the state and this District.

16. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400 at least because IMPAC's principal place of business is in this State and in this District, acts

amounting to or in furtherance of patent infringement have been committed in this District and/or the Defendants are subject to personal jurisdiction in this District.

## BACKGROUND TO THE ACTION

17. Varian is a world leader in medical technology. Varian's research and development teams and partnerships have produced a wide array of products, including hardware, software and services that help doctors and hospitals identify and treat various medical conditions.

18. Varian's greatest contribution to medical innovation has taken shape through its relentless battle against cancer, which has produced a range of treatment technologies, including radiotherapy, radiosurgery, proton therapy and brachytherapy solutions. Varian's foremost mission is to save lives by making cancer treatment safer and more effective.

19. In 1956, Varian built the first medical-grade linear accelerator in the western hemisphere, which was used by doctors at Stanford-Lane Hospital in San Francisco. Linear accelerators are cancer-fighting treatment devices that accelerate charged subatomic particles or ions along a fixed path in order to destroy cancerous tissue. In the decades since, Varian has continued to be at the forefront of linear accelerator technology used to battle cancer.

20. In 1960, Varian introduced the Clinac 6 medical linear accelerator—the first commercial, fully rotational radiotherapy linear accelerator built in the United States—which featured a 360º rotational gantry and helped prove that linear accelerators were superior to older cobalt radiation systems.

21. In 1972, Varian's Clinac 18 featured a "gridded electron gun" that gave unprecedented control over the radiation dosage.

22. In the 1990s, Varian continued to improve on linear accelerator hardware and further developed complementary imaging and treatment planning systems. These innovations included:

- 1991's Dynamic Wedge technology allowed doctors to shape linear accelerator beams, which helped prevent unnecessary damage to healthy tissue and allowed doctors to more accurately focus treatment on malignant tumors;

- 1993's PortalVision™ portal imaging technology, which allowed doctors to verify exact beam placement in relation to a patient's anatomy;

- 1996's CadPlan® treatment planning software, which used diagnostic images of a tumor and surrounding tissues to generate computerized instructions for targeting the tumor with high-intensity X-ray beams; and

- 1999's Real-Time Position Management™ (RPM) Respiratory Gating system, which ensured accuracy when imaging and treating tumors that move when the patient breathes by turning on the radiation beam only when a targeted tumor is within a prescribed area.

23. In the 2000s, Varian continued to develop industry-leading innovations, developing the Eclipse™ treatment planning software, Dynamic Targeting™ image-guided radiotherapy, ARIA® oncology information system, RapidArc® volumetric modulated arc therapy system and a "Smart Segmentation" tool for the Eclipse™ treatment planning software—technology that won an R&D 100 award.

24. Varian has earned significant industry accolades and the success of its medical products has made it one of the most important companies in the cancer treatment industry. Today, Varian appears on both the Fortune 1000 and S&P 500 stock indices. In 2004, Varian

was named to the Forbes Platinum 400 list.  In 2006, Varian received an R&D 100 award and was named a Forbes Global High Performer.  From 2007-2009, Varian was named one of IndustryWeek's "50 Best Manufacturing Companies" in the U.S. three years in a row and was named a top-15 best performing public corporation by BusinessWeek in 2007 and 2009.  In 2011, Varian's TrueBeam system earned the company yet another R&D 100 award, as well as the prestigious Red Dot Award for Product Design.

## **VARIAN'S PATENTED TECHNOLOGY**

25. VMSI is the owner by assignment, and VMS is the exclusive licensee, of the following patents:

- U.S. Patent No. 7,880,154 (the "'154 patent") is entitled "Methods and Apparatus for the Planning and Delivery of Radiation Treatments" and issued on February 1, 2011, naming Karl Otto as the inventor.  A true and correct copy of the '154 patent is attached as Exhibit **A**.

- U.S. Patent No. 7,906,770 (the "'770 patent") is entitled "Methods and Apparatus for the Planning and Delivery of Radiation Treatments" and issued on March 15, 2011, naming Karl Otto as the inventor.  A true and correct copy of the '770 patent is attached as Exhibit **B**.

- U.S. Patent No. 8,696,538 (the "'538 patent") is entitled "Methods and Apparatus for the Planning and Delivery of Radiation Treatments" and issued on April 15, 2014, naming Karl Otto as the inventor.  A true and correct copy of the '538 patent is attached as Exhibit **C**.

26. The patented technology at issue generally relates to radiotherapy and radiosurgery systems and radiation treatment planning software, and methods of using them. Radiotherapy uses certain types of focused energy (*i.e.*, radiation) to kill cancer cells and shrink

tumors. The clinical goal in radiation oncology is to deliver as high of a radiation dose as possible directly to the tumor to kill the cancerous cells while minimizing radiation exposure to surrounding healthy tissue so that complications, side effects and secondary effects of the radiation are limited as much as possible.

27. Advancing these clinical objectives, Varian designed and developed novel radiotherapy and radiosurgery systems that deliver radiation to a patient in accordance with treatment plans that are developed using powerful treatment planning software. This software permits the physician, using detailed three-dimensional computed tomography (CT) imaging, to specify desired radiation doses for a tumor while avoiding surrounding healthy tissue.

28. To develop an optimized treatment delivery plan, the treatment planning software must account for both the desired dose distribution and the delivery constraints of the radiation device. A resulting treatment plan specifies both the shape and intensity of the radiation beam that will be delivered to the patient during one or more rotations of the gantry around the patient. In order to ensure that as many patients as possible can be treated without sacrificing treatment accuracy and effectiveness for each, it is critical to use optimized software algorithms that minimize the time necessary for both treatment plan development and radiation delivery, but that still produce robust treatment solutions within those constraints.

## ACTS GIVING RISE TO THIS ACTION

29. Elekta has manufactured, imported, marketed, sold and offered for sale products that infringe upon the Asserted Patents—including but not limited to Elekta's Versa HD, Axesse, Infinity, Synergy, Agility and VMAT (Monaco) products—throughout the United States, and Elekta continues to manufacture, import, market, sell and offer for sale the same.

30. Some of Elekta's oncology products, such as the Versa HD, infringe upon the Asserted Patents through the delivery of radiation treatment plans generated by certain treatment

planning software, such as Elekta's VMAT (Monaco) software.  Elekta sells a number of its oncology products with the intent that they be used to deliver radiation treatment plans generated by software provided by either Elekta or a third party.  Elekta sells linear accelerators, software and related products with the expectation that they will be combined for purchase, use and/or sale in the United States, including in this District.

31. Elekta has made extensive use of Varian's patented technologies, including each of the Asserted Patents.  Varian has no choice but to defend its industry-leading innovations and substantial research and development investments.  Varian thus requests that this Court award reasonable compensation for Elekta's infringement of the Asserted Patents, including treble damages for Elekta's willful and deliberate infringement of the Asserted Patents, and further requests that this Court grant an injunction against Elekta to prevent ongoing infringement of the Asserted Patents throughout the United States.

**COUNT I**
**(Infringement Of U.S. Patent No. 7,880,154)**

32. Varian incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

33. The United States Patent and Trademark Office ("USPTO") duly and legally issued the '154 patent on February 1, 2011.  VMSI is the legal owner of the '154 patent by assignment, and VMS is the exclusive licensee of the '154 patent.

34. Elekta has infringed and continues to infringe, has contributed to and continues to contribute to acts of infringement and/or has actively and knowingly induced and continues to actively and knowingly induce the infringement of one or more claims of the '154 patent, including at least Claim 19, either literally or under the doctrine of equivalents, by advertising, distributing, making, using, selling and/or offering for sale within the United States and/or

importing into the United States medical devices, related software and related services, including but not limited to the Versa HD, Axesse, Infinity, Synergy, Agility and VMAT (Monaco).

35. Additionally, the accused products were especially designed, made, and/or adapted for use in an infringing manner. The accused products either embody the claimed inventions on their own or are material, non-staple components of end-use products that embody the claimed inventions, which components have no substantial noninfringing uses.

36. Elekta's infringement has caused, and is continuing to cause, damage and irreparable injury to Varian, and Varian will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

37. Varian is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

38. Elekta has had knowledge of the '154 patent since at least as early as March 3, 2015, when it was informed of the patent by Varian. Additionally, upon information and belief, Elekta has had knowledge of the '154 patent, and its infringement thereof, since at least April 11, 2011, as evidenced by citation to the '154 patent in connection with the USPTO's issuance of a Notice of Allowance for Elekta's U.S. Patent No. 7,961,843, and by Elekta's May 2, 2011 acknowledgement of and agreement with the same.

39. Elekta's infringement of the '154 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284. Upon information and belief, Elekta's accused actions continue despite an objectively high likelihood that they constitute infringement of the '154 patent. Elekta either knows or should have known about its risk of infringing the '154 patent. Elekta's conduct despite this knowledge is made with both objective and subjective reckless disregard for the infringing nature of their activities.

40.     Elekta's infringement of the '154 patent is exceptional and entitles Varian to attorneys' fees and costs under 35 U.S.C. § 285.

## COUNT II
### (Infringement Of U.S. Patent No. 7,906,770)

41.     Varian incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

42.     The USPTO duly and legally issued the '770 patent on March 15, 2011. VMSI is the legal owner of the '770 patent by assignment, and VMS is the exclusive licensee of the '770 patent.

43.     Elekta has infringed and continues to infringe, has contributed to and continues to contribute to acts of infringement and/or has actively and knowingly induced and continues to actively and knowingly induce the infringement of one or more claims of the '770 patent, including at least Claim 61, either literally or under the doctrine of equivalents, by advertising, distributing, making, using, selling and/or offering for sale within the United States and/or importing into the United States medical devices, related software and related services, including, but not limited to, the Versa HD, Axesse, Infinity, Synergy, Agility and VMAT (Monaco).

44.     Additionally, the accused products were especially designed, made, and/or adapted for use in an infringing manner. The accused products either embody the claimed inventions on their own or are material, non-staple components of end-use products that embody the claimed inventions, which components have no substantial noninfringing uses.

45.     Elekta's infringement has caused, and is continuing to cause, damage and irreparable injury to Varian, and Varian will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

46. Varian is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

47. Elekta has had knowledge of the '770 patent since at least as early as March 3, 2015, when it was informed of the patent by Varian. Additionally, upon information and belief, Elekta has had knowledge of the '770 patent, and its infringement thereof, since at least August 27, 2012, as evidenced by citation to the '770 patent in connection with a USPTO Non-Final Rejection, and subsequently by Elekta's review and response to the same, during the prosecution history of Elekta's U.S. Patent No. 8,503,608.

48. Elekta's infringement of the '770 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284. Upon information and belief, Elekta's accused actions continue despite an objectively high likelihood that they constitute infringement of the '770 patent. Elekta either knows or should have known about its risk of infringing the '770 patent. Elekta's conduct despite this knowledge is made with both objective and subjective reckless disregard for the infringing nature of their activities.

49. Elekta's infringement of the '770 patent is exceptional and entitles Varian to attorneys' fees and costs under 35 U.S.C. § 285.

**COUNT III**
**(Infringement Of U.S. Patent No. 8,696,538)**

50. Varian incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

51. The USPTO duly and legally issued the '538 patent on April 15, 2014. VMSI is the legal owner of the '538 patent by assignment, and VMS is the exclusive licensee of the '538 patent.

52. Elekta has infringed and continues to infringe, has contributed to and continues to contribute to acts of infringement and/or has actively and knowingly induced and continues to actively and knowingly induce the infringement of one or more claims of the '538 patent, including at least Claims 23 and 26, either literally or under the doctrine of equivalents, by advertising, distributing, making, using, selling and/or offering for sale within the United States and/or importing into the United States medical devices, related software and related services, including but not limited to the Versa HD, Axesse, Infinity, Synergy, Agility and VMAT (Monaco).

53. Additionally, the accused products were especially designed, made, and/or adapted for use in an infringing manner. The accused products either embody the claimed inventions on their own or are material, non-staple components of end-use products that embody the claimed inventions, which components have no substantial noninfringing uses.

54. Elekta's infringement has caused, and is continuing to cause, damage and irreparable injury to Varian, and Varian will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

55. Varian is entitled to injunctive relief and damages in accordance with 35 U.S.C. §§ 271, 281, 283, and 284.

56. Elekta has had knowledge of the '538 patent since at least as early as March 3, 2015, when it was informed of the patent by Varian.

57. Elekta's infringement of the '538 patent has been and continues to be willful and deliberate, justifying a trebling of damages under 35 U.S.C. § 284. Upon information and belief, Elekta's accused actions continue despite an objectively high likelihood that they constitute infringement of the '538 patent. Elekta either knows or should have known about its risk of

infringing the '538 patent. Elekta's conduct despite this knowledge is made with both objective and subjective reckless disregard for the infringing nature of their activities.

58.  Elekta's infringement of the '538 patent is exceptional and entitles Varian to attorneys' fees and costs under 35 U.S.C. § 285.

## REQUEST FOR RELIEF

WHEREFORE, Varian respectfully requests:

(a)  Judgment be entered that Defendants have infringed each of the Asserted Patents;

(b)  Judgment be entered that the commercial use, sale, offer for sale, manufacture or importation by Elekta of at least Elekta's Versa HD, Axesse, Infinity, Synergy, Agility and VMAT (Monaco) products infringe each of the Asserted Patents;

(c)  That, in accordance with 35 U.S.C. § 283, Elekta, and all affiliates, employees, agents, officers, directors, attorneys, successors, and assigns and all those acting on behalf of or in active concert or participation with any of them, be preliminarily and permanently enjoined from infringing each of the Asserted Patents;

(d)  A declaration that Elekta must render a full and complete accounting to Varian for Elekta's profits, gains, advantages or the value of business opportunities received from the foregoing acts of infringement;

(e)  An award of damages sufficient to compensate Varian for Elekta's direct infringement of each of the Asserted Patents, including lost profits suffered by Varian as a result of Elekta's infringement and in an amount not less than a reasonable royalty;

(f)  An award of damages sufficient to compensate Varian for Elekta's indirect infringement of each of the Asserted Patents, including lost profits suffered by Varian as a result of Elekta's infringement and in an amount not less than a reasonable royalty;

(g) An order awarding Varian treble damages under 35 U.S.C. § 284 as a result of Elekta's willful and deliberate infringement of each of the Asserted Patents;

(h) That the case be found exceptional under 35 U.S.C. § 285 and that Varian be awarded its attorneys' fees;

(i) Costs and expenses in this action;

(j) An award of prejudgment and post-judgment interest; and

(k) Such other and further relief as the Court may deem just and proper under the circumstances.

DATED: September 25, 2015              Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:   /s/ Sean Pak
      Sean Pak

*Attorneys for Varian Medical Systems, Inc. and Varian Medical Systems International AG*

-15-

COMPLAINT FOR PATENT INFRINGEMENT
DEMAND FOR JURY TRIAL

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs Varian Medical Systems, Inc. and Varian Medical Systems International AG hereby demand a trial by jury on all issues triable of right by a jury.

DATED: September 25, 2015         Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By:   /s/ Sean Pak
      Sean Pak

*Attorneys for Varian Medical Systems, Inc. and Varian Medical Systems International AG*